## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

PANAMERICA TRADE, INC.,
d/b/a STRIP-CURTAINS.COM,

     Plaintiff,

v.                                                                Case No. 3:25-cv-473-MMH-SJH

CHRISTOPHER BOYS, FOOD
SERVICE GASKETS, LLC, and
RAC INDUSTRIES, LLC,

     Defendants.

_____

## <u>O R D E R</u>

**THIS CAUSE** is before the Court on Plaintiff, Panamerica Trade, Inc.'s

(Panamerica) Motion for Preliminary Injunction and Supporting

Memorandum of Law (Doc. 8; Motion), filed May 1, 2025. On May 2, 2025, the

Court took the Motion under advisement and ordered Panamerica to "promptly

effect service of process on Defendants" and immediately file proof of such

service. <u>See</u> Order (Doc. 9). Additionally, having reviewed the Motion, on May

7, 2025, the Court ordered Panamerica to show cause why the Motion should

not be denied for its failure to establish the requisite irreparable harm. <u>See</u>

Order to Show Cause (Doc. 10). Panamerica responded, contending it

demonstrated a threat of irreparable harm sufficient to justify preliminary

injunctive relief. See Plaintiff's Response to the Court's Order to Show Cause (Doc. 11; Show Cause Response), filed May 15, 2025. Then, on May 27, 2025, Panamerica notified the Court that it had served Defendants Food Service Gaskets, LLC (FSG) and RAC Industries, LLC (RAC) (together, "the LLC Defendants") with process. See Plaintiff's Notice Regarding Service on Corporate Defendants (Doc. 16).[1] With service completed, the Court issued a briefing schedule on the Motion and set this matter for a hearing for the presentation of argument. See Order (Doc. 17), entered May 28, 2025. The LLC Defendants filed a response in opposition to the Motion, see Defendants, Food Service Gaskets, LLC and RAC Industries, LLC's Response in Opposition to Plaintiff's Motion for Preliminary Injunction (Doc. 24; Response), filed June 6, 2025, and Panamerica filed a reply, see Plaintiff's Reply in Support of its Motion for Preliminary Injunction (Doc. 27; Reply), filed June 13, 2025. No party requested an evidentiary hearing. Upon review of the filings, the Court finds that a hearing is unnecessary to resolve the Motion. Accordingly, this matter is ripe for review.

---

[1] The third Defendant, Christopher Boys, has not been served.

## I.    Background

## A.    Facts[2]

In support of its Motion, Show Cause Response, and Reply, Panamerica provided declarations from Jeff Secord, Panamerica's President. <u>See</u> Declaration of Jeff Secord in Support of Plaintiff's Motion for Preliminary Injunction (Doc. 8-1; First Secord Declaration), at ¶ 1; Declaration of Jeff Secord Regarding the Order to Show Cause (Doc. 11-1; Second Secord Declaration); Declaration of Jeff Secord in Support of the Reply on Plaintiff's Motion for Preliminary Injunction (Doc. 27-1; Third Secord Declaration). With their Response, the LLC Defendants provided a declaration from Nathaniel Hofer, "manager of Food Service Gaskets, LLC as well as Vice-President of Rustic Acres Hutterian Brethren, Inc., sole member of Food [Service] Gaskets, LLC … and RAC Industries, LLC[.]" <u>See</u> Declaration of Nathaniel Hofer in Support of Food Service Gaskets, LLC's and RAC Industries, LLC's Opposition to Plaintiff's Motion for Preliminary Injunction (Doc. 25; Hofer Declaration), at ¶ 3. Each party also provided documentary evidence, cited below as necessary.

---

[2] The Court notes that, as the Motion is one for preliminary injunctive relief and is necessarily before the Court on an expedited schedule, the factual record recited here may not be completely developed. Therefore, the following facts and conclusions of law do not necessarily reflect what may be established on a record more fully developed following trial on these issues. Accordingly, the determinations in this Order are expressly limited to the record before the Court at this time and should not be interpreted as a final decision regarding any disputed issues of fact.

The parties sell "strip curtains," which are door systems made of hanging plastic strips used in warehousing, refrigeration, and related industries. <u>See</u> First Secord Declaration ¶ 2; Hofer Declaration ¶¶ 5, 25. Since at least 2001, Panamerica has promoted its products with the mark "Strip-Curtains.com" (the Mark). <u>See</u> First Secord Declaration ¶ 3. Panamerica spends substantial money promoting the Mark, displaying it on websites that it operates including Strip-Curtains.com, StripCurtainsOnline.com, CurtainsandDoorSystems.com, HighCycleSpeedDoors.com, StripCurtains.com, and StripCurtainsCanada.ca. <u>Id.</u> ¶¶ 5, 6. At some point, RAC started buying products from Panamerica, and the relationship between them apparently proceeded for some time without incident. <u>See</u> Third Secord Declaration ¶ 9. So in 2019, when Panamerica discovered that products using the Mark were listed on Amazon without Panamerica's permission, it did not suspect that RAC was behind the actions. <u>Id.</u> Instead, Panamerica attributed the conduct to a nonparty, even suing that party in Canada. <u>Id.</u> ¶ 10.

Meanwhile, RAC started working with Christopher Boys, an apparent outsider to the industry who regularly built profitable websites before selling them to industry players. <u>See</u> Hofer Declaration ¶¶ 7, 10; First Secord Declaration ¶ 10; Exhibit F to the Motion (Doc. 8-7; March 16, 2022, Email). Boys created the knockoff Amazon listings as well as the other websites selling the counterfeit products. <u>See</u> First Secord Declaration ¶ 10 (February 15, 2022,

email from Boys to Secord stating that Boys built the Amazon listings and various websites); March 16, 2022, Email. RAC purchased Boys's ecommerce business in 2018, and as part of this purchase, "FSG was established in June 2019." <u>See</u> Hofer Declaration ¶¶ 7, 10. RAC then "contracted" Boys "to help manage RAC's sales channels and train RAC personnel." <u>Id.</u> ¶ 9. Relevant here, Boys originally built websites with domain names GasketsandStripCurtains.com, PlasticStripCurtain.com, and IndustrialStripCurtain.com. <u>Id.</u> ¶¶ 11, 16; <u>see also</u> March 16, 2022, Email. RAC purchased the first two domains from Boys in February 2021 and the third from Boys in October 2024. <u>See</u> Hofer Declaration ¶¶ 11, 16. And "[i]n April 2022, RAC entered into an agreement with Boys, pursuant to which Boys was to act as a sales representative for RAC to manage online sales." <u>Id.</u> ¶ 13. At least until recently, the LLC Defendants, on their websites and Amazon listings, have used names similar to or incorporating the Mark, displayed the Mark in connection with product advertising and packaging, and included images taken from Panamerica's own sites and listings. <u>See</u> First Secord Declaration ¶¶ 8, 9, 11, 12, 17, 22, 23. The counterfeit products advertised and sold on Amazon are lower quality than Panamerica's products. <u>Id.</u> ¶ 14.

According to Panamerica, the LLC Defendants' copycat domain names and their use of the Mark are unlawful. See generally Complaint; Motion.[3]

In 2022, Panamerica connected the Amazon sales and website infringement to Boys. See Third Secord Declaration ¶¶ 10, 11. Notably, on February 15, 2022, Boys emailed Secord acknowledging that he "hijack[ed]" Panamerica's strip curtains listings and had made "7 figures in kits." See First Secord Declaration ¶ 10. Then on March 16, 2022, Boys emailed Secord again, this time telling Secord that he built the websites GasketsandStripCurtains.com, PlasticStripCurtain.com, and IndustrialStripCurtain.com, (selling the first two sites) and acknowledging that he "got on [Panamerica's Amazon] listings and took all [Panamerica's] sales." See March 16, 2022, Email; First Secord Declaration ¶ 25. In that email, Boys mockingly told Secord that he was in the Philippines, attaching photos and saying, "Its a good life spending other peoples money HAHAHA." See March 16, 2022, Email. "Months later," Boys sent Secord an email titled "the

---

[3] The parties dispute the extent to which the LLC Defendants still use the Mark, and in particular, whether the LLC Defendants have scrubbed it from their Amazon listings and pages. Compare Hofer Declaration ¶¶ 20, 21 (stating that the LLC Defendants "no longer sell or offer for sale any products using the Strip-Curtains.com mark, they have removed all such listing from their Amazon catalog, any web pages they can control and alter, and have no intentions of offering, selling or advertising products using the Strip-Curtains.com mark at any time in the future"), with Third Secord Declaration ¶ 7 (stating that the Amazon store "Strip-Curtains.com" still redirects to the LLC Defendants' store, "Strivide"). This dispute is immaterial to resolving the Motion, and as such, the Court accepts Panamerica's version of the facts for the limited purpose of resolving the Motion.

death of 1000 cuts" that "listed yet another website where Defendants offer their competing products." <u>See</u> First Secord Declaration ¶ 26.

According to Secord, Panamerica has "had an ongoing dialogue for several years with Defendants, but rather than convincing Defendants to stop using our trademark …, Defendants have increased their efforts to use our brand and destroy our sales." <u>See</u> First Secord Declaration ¶ 25.[4] "[A]round" 2022, Panamerica first started trying to combat Defendants' alleged infringement. <u>See</u> Third Secord Declaration ¶¶ 10, 11. "Recognizing litigation is very expensive, [Panamerica] tried multiple avenues to stop Defendants' use of [the Mark] and images prior to filing suit." <u>See</u> Second Secord Declaration ¶ 11. In all, since 2022, Panamerica has "(a) filed an action against Shopify in Canada; (b) filed at least six DMCA take-down requests to stop the use of its images associated with infringement; (c) pursued civil action against Amazon; and (d) filed a UDRP proceeding on several infringing domain names." <u>See</u> Third Secord Declaration ¶ 11; <u>see also</u> Second Secord Declaration ¶¶ 3–6, 9.[5]

---

[4] Panamerica does not say when or how it began attributing the alleged wrongdoing to the LLC Defendants specifically. <u>See</u> Second Secord Declaration ¶ 2 ("[I]t is true that we learned of certain aspects of Defendants' conduct several years ago … ."); Third Secord Declaration ¶ 11 (stating Panamerica "attempted to decipher who owned the differing domain names and which entities were fulfilling Amazon.com orders" and that Panamerica "ultimately determined" the alleged infringement "was being coordinated by Defendants"). It appears that most of Panamerica's communication with Defendants about the alleged infringement has been with Boys.

[5] DMCA takedown notices are notices of copyright infringement given to service providers such as website hosting platforms under the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512(c). UDRP refers to the Uniform Domain Name Dispute Resolution Policy.

Secord describes Panamerica's efforts as "exhaust[ing] all options short of litigation." See Second Secord Declaration ¶ 10. Notably, on October 18, 2024, following receipt of a DMCA Notice of Unauthorized Use, Boys emailed Secord, asking, "How does it feel to get your strip business gutted by us." See Exhibit G to Motion (Doc. 8-8; October 2024 Email Exchange). In response to that email, on October 25, 2024, Secord wrote "Please comply with the notices and remove all content you have copied/stolen (across all sites). Please also note we have purchased a kit with our trademark on it. … Just because you were or are operating overseas … does not make it legal in the US … ." Id. Then, "in January 2025," rather than initiate legal action to halt Defendants' actions entirely, Panamerica "file[d] a Complaint with the Canadian International Internet Dispute Resolution Center … challenging RAC's domain names IndustrialStripCurtain.com and PlasticStripCurtain.com." See Hofer Declaration ¶ 28; Second Secord Declaration ¶ 9; Exhibit I to Motion (Doc. 11-1). Panamerica's efforts to combat Defendants' alleged infringement have failed from the start. See First Secord Declaration ¶ 25; Hofer Declaration ¶ 29. Yet, as late as October 2024—almost two years after Boys told Secord he "hijacked" Panamerica's listings and a year and a half after Boys mockingly told Secord he was spending "other peoples money" in the Philippines—Secord was still trying to resolve the conflict by emailing Boys asking him to remove Panamerica's images and trademarks from his websites and entreating Boys

to "comply and act professionally." <u>See</u> October 2024 Email Exchange.

Things only got worse for Panamerica. In December 2024, after Panamerica contested the use of the Mark on Amazon by Defendants, Amazon shut down Panamerica's page apparently believing Defendants were the true owners of the Mark. <u>See</u> Second Secord Declaration ¶ 6. Panamerica also sued Amazon in British Columbia, but this litigation seems to have ended in December 2024. <u>See</u> <u>id.</u> ¶ 5; Exhibit F to Response (Doc. 24-6). In early 2025, Panamerica tried to reverify its address to reopen its account with Amazon but could not do so. <u>See</u> Second Secord Declaration ¶¶ 6, 7. Panamerica's failure to resolve things with Amazon prompted it to "shift[] [its] focus to the infringers themselves." <u>Id.</u> ¶ 5. According to Panamerica, its efforts against the infringers "increased" in late 2024 when Panamerica "became aware of actual confusion." <u>Id.</u>

## B.    Procedural History

On April 30, 2025, Panamerica initiated this action against Defendants by filing its five-count Complaint. <u>See</u> Complaint (Doc. 1). Panamerica's claims are based on Defendants' alleged infringement of the Mark and ownership of domain names confusingly similar to the Mark. <u>See generally</u> Complaint. In Count I, Panamerica brings a claim against all Defendants for false designation under 15 U.S.C. § 1125(a). <u>See</u> Complaint ¶¶ 33–40. In Counts II and III, Panamerica brings trademark infringement claims against all

Defendants under 15 U.S.C. § 1114 and common law. See id. ¶¶ 41–56. In Count IV, Panamerica brings a claim against all Defendants for common law unfair competition. See id. ¶¶ 57–61. And in Count V, Panamerica brings a claim against all Defendants for cybersquatting under 15 U.S.C. § 1125(d). See id. ¶¶ 62–71.[6]

The day after filing its Complaint, Panamerica filed the Motion under Rule 65(a) of the Federal Rules of Civil Procedure (Rule(s)), seeking preliminary injunctive relief. See Motion; Fed. R. Civ. P. 65(a). Panamerica included a proposed preliminary injunction order. See [Proposed] Order Granting Motion for Preliminary Injunction (Doc. 8-10; Proposed Order). The requested injunctive language appears in paragraphs seven and eight, where Panamerica requests that the Court enjoin Defendants as follows:

> 7. Defendants, and their officers, agents, related companies, servants, employees, attorneys, and any other persons or entities in active concert or participation with any of the foregoing, are

---

[6] Notably, throughout the Complaint, Panamerica frequently lumps together the actions and liabilities of Defendants as though they were one entity. See Complaint ¶¶ 7, 8, 12, 23, 24, 26, 28, 31, 32. In the Eleventh Circuit, this manner of pleading, a form of "shotgun pleading," is unacceptable. See Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1323 (11th Cir. 2015) (explaining that a party violates the Federal Rules of Civil Procedure when it "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions"). Shotgun pleadings like Panamerica's violate the Rules because they "fail … to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." See id. When faced with the burden of deciphering a shotgun pleading, it is the trial court's obligation to strike the pleading on its own initiative and force the plaintiff to replead to the extent possible under Rule 11. See Cramer v. State of Fla., 117 F.3d 1258, 1263 (11th Cir. 1997) (admonishing district court for not striking shotgun complaint on its own initiative). As such, the Court will strike the Complaint and give Panamerica the opportunity to file a corrected complaint that specifies the Defendant or Defendants it alleges undertook each act and omission.

hereby PRELIMINARILY ENJOINED from using the STRIP-CURTAINS.COM mark, or any trademark confusingly similar thereto, in connection with the manufacture, sale, advertising, marketing, and promotion of PVC doors and curtains, including but not limited to in Internet websites and any Amazon.com storefront, pending further Order of this Court.

8. Defendants shall park or otherwise disable or deactivate all of [sic] domain names containing the words "STRIP" and "CURTAINS", including but not limited to https://IndustrialStripCurtain.com/, https://GasketsandStripCurtains.com, and https://PlasticStripCurtain.com.

Proposed Order at 3.

Notably, Panamerica was twice put on notice of the need to demonstrate irreparable harm, and in particular, the need to overcome the fact that Panamerica delayed in filing this action and seeking preliminary injunctive relief. Indeed, in the Order to Show Cause, the Court explained that based on the evidence Panamerica presented with the Motion, "it appear[ed] that Panamerica ha[d] known about Defendants' alleged wrongdoing for many months if not years." See Order to Show Cause at 1. The Court then outlined the law in the Eleventh Circuit holding that such delay undermines a finding of irreparable harm. Id. at 2 (citing Wreal, LLC v. Amazon.com, Inc., 840 F.3d 1244, 1247 (11th Cir. 2016)). Due to Panamerica's apparent delay, the Court ordered Panamerica to show cause why the Motion should not be denied based on its failure to show the requisite irreparable harm. See generally id. Then after Panamerica responded to the Order to Show Cause and the Court issued

the briefing schedule, the LLC Defendants responded to the Motion arguing that Panamerica's delay undermines a finding of irreparable harm. See Response at 14–19. And Panamerica responded with additional argument and evidence as to this issue. See Show Cause Response; Reply; Second Secord Declaration; Third Secord Declaration.

## II.   Legal Standard

A preliminary injunction is an extraordinary and drastic remedy. See McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998); see also Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."); Davidoff & CIE, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1300 (11th Cir. 2001). Indeed, "[a] preliminary injunction is a powerful exercise of judicial authority in advance of trial." Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, 896 F.2d 1283, 1284 (11th Cir. 1990).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter, 555 U.S. at 20. The Eleventh Circuit has described the heavy burden on a party seeking preliminary injunctive relief as follows:

> A district court may grant a preliminary injunction only if the moving party establishes that: (1) it has a substantial likelihood of success on the merits; (2) it will suffer an irreparable injury unless the injunction is granted; (3) the harm from the threatened injury outweighs the harm the injunction would cause the opposing party; and (4) the injunction would not be adverse to the public interest.

Gonzalez v. Governor of Ga., 978 F.3d 1266, 1270–71 (11th Cir. 2020); see also Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (per curiam) (en banc). And "[a] showing of irreparable injury is 'the sine qua non of injunctive relief.'" Siegel, 234 F.3d at 1176 (quoting Ne. Fla. Chapter, 896 F.2d at 1285).

The movant, at all times, bears the burden of persuasion as to each of these requirements. See Ne. Fla. Chapter, 896 F.2d at 1285. Notably, "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Id. (quoting Sampson v. Murray, 415 U.S. 61, 88 (1974)). As such, even if a party "establish[es] a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." Siegel, 234 F.3d at 1176; see also Ne. Fla. Chapter, 896 F.2d at 1285 (reversing the entry of injunctive relief where the plaintiff failed to show irreparable harm); Citibank, N.A. v. Citytrust, 756 F.2d 273, 276–77 (2d Cir. 1985) (reversing the entry of preliminary injunctive relief where the plaintiff failed to establish irreparable harm in part due to its delay in seeking to protect its mark). And, a party's failure to establish any one of the essential elements will warrant denial of the

request for preliminary injunctive relief and obviate the need to discuss the remaining elements. See Pittman v. Cole, 267 F.3d 1269, 1292 (11th Cir. 2001) (citing Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994)).

## III.    Discussion

In Winter, the Supreme Court emphasized that "plaintiffs seeking preliminary relief" must "demonstrate that irreparable injury is likely in the absence of an injunction." Winter, 555 U.S. at 22. "[T]he asserted irreparable injury must be neither remote nor speculative, but actual and imminent." Swain v. Junior, 961 F.3d 1276, 1292 (11th Cir. 2020) (quoting Siegel, 234 F.3d at 1176). In Wreal, the Eleventh Circuit explained that a party's delay in seeking preliminary injunctive relief weighs against a finding of irreparable harm. See Wreal, 840 F.3d at 1248 ("A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm."). This is so because "the very idea of a preliminary injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on the merits." Id. And delay can still undermine a showing of irreparable harm if the movant (like a trademark plaintiff seeking an injunction under 15 U.S.C. § 1116) might otherwise be entitled to a presumption of irreparable harm. In footnote 3 of the Order to Show Cause, the Court explained:

> To protect against the infringement of a federally registered trademark and violations of 15 U.S.C. § 1115(a), (c), and (d), in 2020 Congress amended § 1116 (providing for injunctive relief in trademark and related cases) to codify the historic principle that a plaintiff seeking a preliminary injunction is entitled to a presumption of irreparable harm upon a finding of a likelihood of success on the merits. See 15. U.S.C. § 1116(a). But even since then, the Eleventh Circuit has affirmed denial of preliminary injunctive relief where the plaintiff "fail[s] to act with 'speed and urgency' in seeking an injunction," as that fact "necessarily undermine[s] a finding of irreparable harm." Bethune-Cookman, Univ., Inc. v. Dr. Mary McLeod Bethune Nat'l Alumni Ass'n, Inc., No. 22-14257, 2023 WL 3704912, at *3, *3 n.2 (11th Cir. May 30, 2023) (quoting Wreal, 840 F.3d at 1248) (first alteration in original).

Order to Show Cause at 2–3 n.3.[7]

In its Show Cause Response, Panamerica acknowledged these precedents but cited to out-of-circuit cases "h[olding] that delay, on its own, does not necessarily preclude injunctive relief." See Show Cause Response at 3–4. Certainly, these cases generally support such a proposition and courts in the Eleventh Circuit could, in appropriate circumstances, reach a similar conclusion. See Larweth v. Magellan Health, Inc., 841 F. App'x 146, 158–59 (11th Cir. 2021) (holding that a district court did not abuse its discretion in granting a preliminary injunction when a delay of several months was justified by the parties' "discussions regarding the enforceability of the restrictive

---

[7] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

covenants and the possibility of a settlement"). But, "an explanation, in and of itself, will not justify a significant delay; it must be a good explanation." <u>InVue Sec. Prods. Inc. v. Vanguard Prods. Grp., Inc.</u>, No. 8:18-CV-2548-T-33SPF, 2019 WL 4671143, at *6 (M.D. Fla. July 1, 2019) (collecting cases), <u>report and recommendation adopted</u>, 2019 WL 4673755, at *1 (M.D. Fla. Aug. 15, 2019).[8] Here, considering Panamerica's at least three-year delay in seeking preliminary injunctive relief in the face of Boys's mocking defiance, Panamerica has failed to carry its burden of establishing, at this juncture, that it has a "need for speedy and urgent action to protect [its] rights before [the] case can be resolved on its merits." <u>See</u> <u>Wreal</u>, 840 F.3d at 1248.

Panamerica knew about the allegedly infringing Amazon listings as early as 2019 and connected them to Boys in 2022. <u>See</u> First Secord Declaration ¶ 10; Third Secord Declaration ¶¶ 10, 11. Indeed, Panamerica knew Boys created the allegedly infringing websites as early as March 2022. <u>See</u> March 16, 2022, Email. If Panamerica is threatened with imminent irreparable harm now, that was just as true on February 15, 2022, when Boys told Secord that he "hijack[ed]" Panamerica's strip curtains listings. <u>See</u> First Secord Declaration ¶ 10. It was just as true on March 16, 2022, when Boys told Secord

---

[8] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. <u>See</u> <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

that he built GasketsandStripCurtains.com, PlasticStripCurtain.com, and IndustrialStripCurtain.com and acknowledged that he "got on [Panamerica's Amazon] listings and took all [Panamerica's] sales." <u>See</u> March 16, 2022, Email; First Secord Declaration ¶ 25. And it was just as true "[m]onths later," when Boys threatened Secord with "death of 1000 cuts" and told Secord about "yet another website where Defendants offer their competing products." <u>See</u> First Secord Declaration ¶ 26. Even considering Panamerica's well intentioned delay in trying other avenues to halt the offending conduct since late 2024 when Panamerica first discovered "actual confusion," Panamerica still waited at least four months before seeking preliminary injunctive relief. <u>See</u> Second Secord Declaration ¶ 5. This delay grossly undermines Panamerica's assertion that it now faces imminent irreparable harm warranting the entry of injunctive relief before resolution of the merits of its claims. <u>See</u> <u>Wreal</u>, 840 F.3d at 1248.[9]

In its Show Cause Response and Reply, Panamerica asserted that when evaluating the delay, the Court should consider whether the delay was reasonable, whether the delay amounted to Panamerica "sit[ting] on its

---

[9] Despite receiving ample notice that its delay was a significant challenge to receiving its requested relief and being given two opportunities to produce evidence demonstrating promptness, Panamerica has remained notably vague about when it first connected Boys and the alleged infringement to the LLC Defendants. <u>See</u> Second Secord Declaration ¶ 2; Third Secord Declaration ¶ 11. And Panamerica has not produced evidence that the LLC Defendants' involvement in the alleged infringement is a recent revelation. <u>See generally</u> Response to Order to Show Cause; Reply.

rights," and whether the delay prejudiced Defendants. <u>See</u> Show Cause Response at 4; Reply at 9 (quoting <u>Fish v. Kobach</u>, 840 F.3d 710, 753 (10th Cir. 2016)). The Court has done so. The Court has considered Panamerica's explanations for its delay but finds that they are not "good explanations" in light of the actions taken, the length of the delay, and the response it received to its early efforts. The undisputed facts show that, to the extent Panamerica says it will now suffer irreparable harm, Panamerica's delay was not reasonable and Panamerica did in fact "sit on its rights." The threat of harm Panamerica faces now is the very same harm it has been suffering since 2022. Moreover, the efforts Panamerica has undertaken show that it has been willing to try slow, temporary, and piecemeal methods to stem the harm to its business. Again, since 2022, Panamerica has "(a) filed an action against Shopify in Canada; (b) filed at least six DMCA take-down requests to stop the use of its images associated with infringement; (c) pursued civil action against Amazon; and (d) filed a UDRP proceeding on several infringing domain names." <u>See</u> Third Secord Declaration ¶ 11; <u>see also</u> Second Secord Declaration ¶¶ 3–6, 9, 10 (describing the exhaustion of "all options short of litigation" immediately prior to filing this action and filing the Motion). These efforts show that, when facing allegedly infringing action that openly threatened to completely destroy its business, Panamerica chose to rely on the discretion of third parties like Amazon and Shopify rather than seek decisive recourse

against Defendants directly. As to the DMCA takedown efforts, it is difficult to see how these efforts explain Panamerica's delay as to the rights at stake in this litigation considering that Panamerica's claims here are not based in copyright and Panamerica does not seek to enjoin Defendants from using its images. See generally Complaint; Proposed Order. None of the efforts Panamerica pursued would have secured for it the type of broad relief it now seeks in the Motion. And when Panamerica did finally decide to go after Defendants themselves, it waited over four months before seeking preliminary injunctive relief. See Second Secord Declaration ¶ 5 (Panamerica "became aware of actual confusion" in "late 2024"). While it is understandable that Panamerica sought to avoid expensive litigation in federal court, its conduct over the course of years is entirely inconsistent with a contention that it is now acting in the face of imminent irreparable harm. The harm Panamerica seeks to address has been ongoing for long periods of time and despite Boys's unabashed—indeed, proud—proclamations of his success and his intention to continue with his actions, Panamerica did not take decisive action. Instead, Panamerica waited until May 2025 to seek relief. Considering that "the necessity of moving expeditiously" upon learning of a defendant's alleged wrongdoing is "a touchstone requirement for a preliminary injunction," Panamerica's conduct fails to support a finding that now, in 2025, it will suffer irreparable harm after allowing Defendants to pursue their course of conduct

for so long. <u>See, e.g.</u>, <u>Tech Traders, LLC v. Insuladd Env't, Ltd.</u>, No. 6:18-cv-754-Orl-40GJK, 2018 WL 5830568, at *3 (M.D. Fla. Nov. 7, 2018) (reinstating a company to more easily find a lawyer and hoping to avoid alienating family members did not justify delay); <u>U.S. Structural Plywood Integrity Coal. v. PFS Corp.</u>, No. 19-62225-CIV–Altman, 2020 WL 6544489, at *4 (S.D. Fla. Nov. 6, 2020) (compiling discovery and preparing arguments did not justify delay); <u>Car Body Lab Inc. v. Lithia Motors, Inc.</u>, No. 21-CV-21484-Moreno/Goodman, 2021 WL 2652774, at *1 (S.D. Fla. June 21, 2021), <u>report and recommendation adopted sub nom.</u>, 2021 WL 3404040 (S.D. Fla. Aug. 4, 2021) (conducting discovery and litigating before the USPTO appeal board, "where injunctive relief is unavailable," did not justify delay); <u>Tallahassee Bail Fund v. Marshall</u>, No. 4:22cv297-MW/MAF, 2022 WL 22804776, at *2–3 (N.D. Fla. Oct. 11, 2022) (unsophistication of the plaintiff and prompt motion for preliminary injunction after filing the complaint did not justify delay when plaintiff knew of the underlying alleged wrongful conduct for 17 months before filing the complaint).

In finding that Panamerica's delay in this case warrants denial of the request for preliminary injunctive relief, the Court does not suggest that immediately filing a lawsuit is the only way to assure the ability to obtain such relief. Some effort to obtain voluntary compliance may well constitute a good explanation for a brief (or not lengthy) delay. And as noted, it is

understandable that Panamerica would want to engage in some measure of such efforts before initiating litigation. But where a party seeks to rely on a threat of irreparable harm to obtain the extraordinary remedy of a preliminary injunction, there comes a point where the unsuccessful efforts to obtain voluntary compliance must give way. Here that point in time passed long ago. Because the Court concludes Panamerica has failed to carry its burden to establish that it faces a likelihood of suffering irreparable harm, the Motion is due to be denied.[10]

Accordingly, it is

**ORDERED:**

1. Panamerica Trade, Inc.'s Motion for Preliminary Injunction and Supporting Memorandum of Law (Doc. 8) is **DENIED**.

2. The hearing set for Tuesday, June 24, 2025, is **CANCELED**.

3. Panamerica's Complaint (Doc. 1) is **STRICKEN**.

4. On or before **July 7, 2025**, Panamerica shall file a corrected complaint that complies with the Federal Rules of Civil Procedure and the directives of note 6 of this Order.[11]

---

[10] In denying the Motion, the Court need not and does not address the other elements necessary to obtain preliminary injunctive relief or express any view on the merits of Panamerica's claims. See Pittman, 267 F.3d at 1292; Wreal, 840 F.3d at 1249.

[11] The filing of the corrected complaint does not affect any right Panamerica may have to amend as a matter of course under Rule 15(a)(1).

5.    Defendants shall respond to the corrected complaint in accordance with Rule 15 of the Federal Rules of Civil Procedure as if it were an amended complaint.

**DONE AND ORDERED** in Jacksonville, Florida this 20th day of June, 2025.


**MARCIA MORALES HOWARD**
United States District Judge


lc33

Copies to:
Counsel of Record