UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PANAMERICA TRADE, INC., etc.,

      Plaintiff,

v.                                                           CASE NO. 3:25-cv-473-MMH-SJH

FOOD SERVICE GASKETS, LLC,
etc., et al.,

      Defendants.

_____/

## **ORDER**

**THIS CAUSE** is before the Court on Plaintiff's Renewed Motion for Clerk's Default of Baliwag LLC ("Motion"). Doc. 81. The Motion is due to be denied.

On June 20, 2025, the Court struck Plaintiff's complaint as a shotgun pleading and directed Plaintiff to file a corrected pleading. Doc. 31 at 10 n.6, 21. Plaintiff then filed its amended complaint, Doc. 32, which dropped Christopher Boys as a defendant and added additional defendants, including Baliwag LLC ("Baliwag").

On August 21, 2025, Plaintiff filed a motion for entry of a clerk's default against Baliwag, Doc. 49, which the Court denied without prejudice for failure to include any supporting memorandum of legal authority and to adequately address, with citations of authority, that service on Baliwag was proper, Doc. 50. Plaintiff then filed a renewed motion seeking the same relief, Doc. 51, which was again denied as insufficient, Doc. 52. As the Court explained, Plaintiff sought entry of a default against Baliwag based on substitute service on the Florida Secretary of State. Doc. 52. at 1. Such substitute

service was purportedly made on July 24, 2025. Doc. 51 at 4. But Plaintiff's renewed motion, filed after the predecessor was denied for lack of any supporting authority, cited no case law and only partially and incompletely cited the statutes governing substitute service. Doc. 52 at 1. Upon review, the Court explained that "[g]iven the due-process concerns attendant to substitute service, strict compliance with statutes authorizing substitute or constructive service is required" and Plaintiff's filing did not show "the requisite due diligence to resort to substitute service" under applicable law. *Id.* at 2. Among other shortfalls, Plaintiff made no effort to discuss or show that it had diligently inquired and exerted appropriate efforts to attempt to effectuate personal service. *Id.* at 2-3. The Court's Order provided a deadline for Plaintiff to file proof of proper service of the summons and amended complaint on Baliwag and/or seek renewed relief, if appropriate, with respect to Baliwag. *Id.* at 3.

On October 15, 2025, Plaintiff moved for a third time for default against Baliwag. Doc. 59. That motion was again insufficient, and given the repeated failures in Plaintiff's filings with respect to Baliwag, the Court held a hearing on October 30, 2025, to address concerns and provide additional instructions to Plaintiff. Doc. 69.[1]

---

[1] Plaintiff's October 15, 2025, motion mainly relied on alleged due diligence undertaken *after* the Court's September 10, 2025, Order. Doc. 59 at 6, 12-14; Doc. 59-3. But Plaintiff cited no authority that a premature substitute service on the Florida Secretary of State could be cured by *post*-service due diligence. To the contrary, the plain statutory language of the authorizes substitute service only after due diligence. *See* Fla. Stat. 48.062(4). Moreover, Plaintiff failed to adequately explain due-diligence efforts at service abroad given prior representations it had made. At the hearing, the Court discussed these issues in detail. Doc. 69 at 10–35. The Court also reiterated the need to strictly follow all statutory requirements for substitute service. *See id.* at 10, 30.

As stated on the record at the hearing, the Court denied Plaintiff's third motion for default against Baliwag without prejudice, providing Plaintiff another extended deadline to take appropriate corrective action. Doc. 66.

On December 23, 2025, following renewed service efforts, Doc. 70, Plaintiff again moved, for a fourth time, for a clerk's default against Baliwag, Doc. 72. Once again, however, its motion was denied for failure to demonstrate valid service. Doc. 77. As the Court explained, although Plaintiff finally demonstrated due diligence sufficient to trigger resort to Fla. Stat. § 48.161, such was "only part of the equation"; Plaintiff was also required to "show strict adherence to the requirements for perfecting such service" and its efforts in that respect were lacking. *Id.* at 2. As the Court explained in its February 5, 2026, Order, under Fla. Stat. § 48.161:

> (1) When authorized by law, substituted service of process on a nonresident individual or a corporation or other business entity incorporated or formed under the laws of any other state, territory, or commonwealth, or the laws of any foreign country, may be made by sending a copy of the process to the office of the Secretary of State. Such process must be issued in the name of the party to be served, in the care of the Secretary of State, and must be made by personal delivery; by registered mail; by certified mail, return receipt requested; by use of a commercial firm regularly engaged in the business of document or package delivery; or by electronic transmission. Such service is sufficient service on a party that has appointed or is deemed to have appointed the Secretary of State as such party's agent for service of process.

> (2) When an individual or a business entity is a nonresident or conceals his, her, or its whereabouts, the party seeking to effectuate service may, after exercising due diligence to locate and effectuate personal service, use the substituted service method specified in subsection (1) in connection with any action in which the court has jurisdiction over the individual or business entity.

(3) Whenever a party is using substituted service specified in subsection (1), notice of service and a copy of the process must also be sent forthwith to the party being served by the party effectuating service or by such party's attorney by registered mail; by certified mail, return receipt requested; or by use of a commercial firm regularly engaged in the business of document or package delivery. In addition, if the parties have recently and regularly used e-mail or other electronic means to communicate between themselves, the notice of service and a copy of the process must also be sent by such electronic means. The notice of service and a copy of the process must be sent to the last known physical address and, if applicable, last known electronic address of the party being served. The party effectuating service shall file proof of service or return receipts showing delivery to the other party by mail or courier and by electronic means, if electronic means were used, unless the party is actively refusing or rejecting the delivery of the notice or the party is concealing himself, herself, or itself. An affidavit of compliance of the party effectuating service or such party's attorney must be filed within 40 days after the date of service on the Secretary of State or within such additional time as the court allows. The affidavit of compliance must set forth the facts that justify such substituted service and must contain sufficient facts showing:

(a) That due diligence was exercised in attempting to locate and effectuate personal service on the party; and

(b) To the extent applicable, the party's nonresidence, or concealment, or that the party is a business entity for which substituted service is otherwise authorized by law. The party effectuating service does not need to allege in its original or amended complaint the facts required to be set forth in the affidavit of compliance.

(4) When an individual or a business entity conceals its whereabouts, the party seeking to effectuate service may, after exercising due diligence to locate and effectuate personal service, use substituted service pursuant to subsection (1) in connection with any action in which the court has jurisdiction over such individual or business entity. The party seeking to effectuate service must also comply with subsection (3); however, a return receipt or other proof showing acceptance of receipt of the notice of service and a copy of the process by the concealed party need not be filed.

*Id.* at 2–4 (quoting Fla. Stat. § 48.161). But, as the Court explained, Plaintiff's papers did not "reflect—or even address—compliance with Fla. Stat. § 48.161(3)–(4), which, among other things, require, even where substitute service is authorized (and even where a party is concealing its whereabouts), certain notice forthwith to the party as well." *Id.* at 4. As such, Plaintiff failed to demonstrate "the requisite strict compliance with the statutory requirements for substitute service." *Id.* The Court thus denied Plaintiff's (fourth) motion for clerk's default without prejudice and provided Plaintiff "*one final* opportunity to properly perfect service on Baliwag." *Id.*

Following this one final opportunity, Plaintiff filed another notice contending it had properly served Baliwag, Doc. 78, followed by the instant Motion, Doc. 81. The Motion remains insufficient and does not reflect proper service. In the instant Motion, Plaintiff relies on the same substitute service to the Florida Secretary of State as it did in the fourth motion, which substitute service Plaintiff states was delivered on November 19, 2025, and accepted by the Florida Secretary of State on November 21, 2025. *See* Doc. 78 at 2; *see also* Doc. 81 at 2, 9. But Plaintiff's papers acknowledge that the notice required "forthwith" under Fla. Stat. § 48.161(3)–(4) was not provided anywhere near such time. *See* Doc. 78 at 2; *see also* Doc. 81 at 2, 9. Instead, Plaintiff contends that the notice required "forthwith" under Fla. Stat. § 48.161(3)–(4) was finally sent on February 6, 2026, after the Court had already denied as insufficient Plaintiff's fourth motion for default and well over *two months after* the purported substitute service on which Plaintiff relies was delivered to and accepted by the Florida Secretary of State. *See* Doc. 78 at 3; *see also* Doc. 81 at 2, 9. As a matter of law, that is

not forthwith, is insufficient, and reflects that Plaintiff has (once again) yet to properly serve Baliwag. *See, e.g., Crystal Springs Partners, Ltd. v. Michael R. Band, P.A.*, 132 So. 3d 1230, 1231 (Fla. 3d DCA 2014) ("In the present case, the appellee satisfied the first statutory requirement by forwarding a copy of the process to the Secretary of State of Florida. The next statutory requirements were not met, however. Notice of the service on the Secretary of State and a copy of the process itself was required to be sent by registered or certified mail to the defendant 'forthwith.' Instead, the appellee/plaintiff sent Crystal Springs a certified letter and the requisite copies forty-two days after the Secretary of State was served (and twenty-nine days after the appellee received correspondence from the Secretary of State confirming such service). That is not 'forthwith' as we and other courts have interpreted the term." (collecting authority)); *Arison v. Offer*, 626 So. 2d 1039, 1040 (Fla. 4th DCA 1993).[2]

In short, despite four insufficient prior motions, Docs. 49, 51, 59, 72, resulting in and requiring four corresponding Orders and a hearing with multiple instructions from the Court, Docs. 50, 52, 66, 69, 77, including repeated reminders of the need for strict compliance with the statutory requirements for substitute service, Doc. 52 at 3; Doc. 69 at 10, 30; Doc. 77 at 4, along with an admonition that this was Plaintiff's final opportunity to do so, Doc. 77 at 4, Plaintiff's instant Motion is again insufficient and

---

[2] Despite it being the reason Plaintiff's fourth motion was denied, the instant Motion barely addresses this issue, instead largely repackaging the fourth motion's discussion of other issues and including the explanation that Plaintiff finally got around to sending notice to Baliwag in February 2026 (without any supporting legal authority that this was sufficient). Doc. 81.

reflects a continued failure to properly serve Baliwag. As such, and given that Baliwag was named in the Amended Complaint first filed on July 3, 2025, Doc. 32, that the Court has provided multiple opportunities to serve Baliwag and multiple *sua sponte* extensions of the deadline to do so, and that the remaining parties are apparently no longer litigating the underlying case but rather enforcement of a settlement agreement, Docs. 79, 80, 82, it appears that dismissal without prejudice as to Baliwag may be proper. *See* Fed. R. Civ. P. 4(m). Thus, Plaintiff will be directed to show cause in writing why this case should not be dismissed without prejudice as to Baliwag. Among any other pertinent considerations, if Plaintiff contends that a dismissal without prejudice as to Baliwag would effectively operate as with prejudice (due to a timeliness bar on refiling or otherwise), its response must expressly include such a contention, with supporting analysis and authority, under a separate heading.[3]

Accordingly, is **ordered**:

1.    The Motion, Doc. 81, is **denied**.

2.    On or before **April 13, 2026**, Plaintiff must **show cause** in writing why this case should not be dismissed without prejudice as to Baliwag. Plaintiff's failure to do so may result in a dismissal without prejudice as to Baliwag without further notice.

---

[3] A bar to refiling does not necessarily require another extension of the deadline for service, but it must be considered in determining whether dismissal is appropriate. *See Lepone-Dempsey v. Carroll Cnty. Comm'rs*, 476 F.3d 1277, 1282 (11th Cir. 2007).

**DONE AND ORDERED** in Jacksonville, Florida, on April 3, 2026.

Samuel J. Horovitz
United States Magistrate Judge

Copies to:

Counsel of Record

8